**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                **CRIMINAL ACTION**

**VERSUS**                                                                    **No. 09-157**

**JAMAL MARTIN WALTON**                                          **SECTION I**

<u>**ORDER AND REASONS**</u>

Before the Court are a motion[1] to dismiss counts 1, 2, 3 and 4 of the superseding indictment, a motion[2] to sever defendant, a motion[3] to sever counts, and a motion[4] to suppress statement filed by defendant, Jamal Martin Walton ("Walton").  For the following reasons, the motion to dismiss counts, the motion to sever Walton, and the motion to sever counts are **DENIED** and the motion to suppress statement is **DISMISSED AS MOOT**.

*BACKGROUND*

Count 1 of the superseding indictment charges that on or about June 9, 2004, Walton, and others charged as co-defendants, conspired to use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, in violation of Title 18, United States Code, Section 924(c); all in violation of Title 18, United States Code, Section 924(o).

Count 2 of the superseding indictment charges that on or about June 9, 2004, Walton, and others charged as co-defendants, aiding and abetting each other, did knowingly use carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking; all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (B)(i) and (2).

---

[1] R. Doc. No. 202.
[2] R. Doc. No. 203.
[3] R. Doc. No. 204.
[4] R. Doc. No. 205.

Count 3 of the superseding indictment charges that on or about June 9, 2004, Walton, and others charged as co-defendants, aiding and abetting each other, with the intent to cause death and serious bodily harm, and by force, violence, and intimidation, took a motor vehicle from the person and presence of Nathaniel Robertson and intentionally caused the death of Nathaniel Robertson; all in violation of Title 18, United States Code, Sections 2119 and 2.

Count 4 of the superseding indictment charges that on or about June 9, 2004, Walton, and others charged as co-defendants, aiding and abetting each other, did knowingly use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, and in the course of this violation caused the death of Nathaniel Robertson, which killing is a murder as defined in Title 18, United States Code, Section 1111; all in violation of Title 18, United States Code, Sections 924(j) and 2.

Count 5 of the superseding indictment charges that on or about January 9, 2007, Walton, and others not charged as co-defendants, conspired to use, carry, and brandish a firearm during a crime of violence, to wit: carjacking, in violation of Title 18, United States Code, Section 924(c); all in violation of Title 18, United States Code, Section 924(o).

Count 6 charges that on or about January 9, 2007, Walton, aided and abetted by others not charged as co-defendants, did knowingly use, carry, and brandish a firearm during and in relation to the commission of a crime of violence, to wit: carjacking; all in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.

Count 7 charges that on or about January 9, 2007, Walton, aided and abetted by others not charged as co-defendants, with the intent to cause death and serious bodily harm, and by force, violence, and intimidation, took a motor vehicle from the person and presence of an unknown person; all in violation of Title 18, United States Code, Sections 2119 and 2.

Walton has filed four motions *in limine*.  First, Walton seeks to dismiss counts 1, 2, 3 and 4 based on his claim that the prejudicial delay in prosecution violated his right to due process.  Second, Walton seeks a severance from his co-defendant,[5] arguing that evidence introduced pursuant to Federal Rule of Evidence 404(b) with respect to Charles Raymond ("Raymond") would unfairly prejudice him.  Third, Walton seeks a severance of counts 5, 6, and 7 from counts 1, 2, 3, and 4, arguing that counts 5, 6, and 7 were improperly joined pursuant to Rule 8 of the Federal Rules of Criminal Procedure.  Finally, Walton seeks to suppress a statement made while he was in the custody of the New Orleans Police Department, claiming that he did not knowingly, intelligently, and voluntarily waive his rights before making such statement.

The government has filed a response to each motion.  With respect to the motion to suppress Walton's statement, the government represents that it will not seek to introduce the statement in question, thereby mooting Walton's motion.  The Court addresses each remaining motion in turn.

## ANALYSIS

A.  Motion to Dismiss Counts 1, 2, 3, and 4

Walton moves the Court to dismiss counts 1, 2, 3, and 4 due to an alleged failure to comply with the Juvenile Delinquency Act ("JDA") and an alleged prejudicial delay in prosecution that violated due process.  Specifically, Walton argues that because he allegedly committed the crimes charged when he was seventeen years old and the government waited until after his twenty-first birthday to prosecute him, he no longer qualified for the protections of the JDA and his due process rights were violated as a result.

---

[5] In his motion, defendant seeks severance from co-defendants Charles Raymond and Adrian McDaniel.  Since Adrian McDaniel has pled guilty and will not be proceeding to trial as a co-defendant, the Court construes defendant's motion as seeking severance from Charles Raymond, only.

Pursuant to 18 U.S.C. 5031, a juvenile is a person "who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." 18 U.S.C. 5031.  "In applying Section 5031, the courts have consistently held that a defendant who is alleged to have committed a crime before his eighteenth birthday may not invoke the protection of the Juvenile Delinquency Act if criminal proceedings begin after the defendant reaches the age of twenty-one."[6] *United States v. Hoo*, 825 F.2d 667, 669-670 (2d Cir. 1987).

Walton argues that the government did not comply with the JDA, and that he was prejudiced because he lost the protections of the JDA and potential witnesses and other evidence are no longer available.  The government responds to these allegations by arguing that Walton simply does not qualify for protection under the JDA because of the timing of the indictment. The government also contests that the delay in Walton's prosecution was timed in order to circumvent his eligibility for protection under the JDA; instead, the government suggests that the delay resulted from the "feckless effort" of the District Attorney for the Parish of Orleans in opening a file on this case and Hurricane Katrina's hampering effect on the local criminal justice system.[7]

In order to prove that due process rights were violated because of preindictment delay, the defendant must prove by a preponderance of the evidence that "(1) substantial prejudice resulted from the delay and (2) the delay was an intentional measure in order to gain a technical advantage." *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978); *United States v. Comosona*, 614 F.2d 695, 697 (10th Cir. 1980) (defendant "bears the ultimate burden of establishing the Government's due process violation by a preponderance of the evidence"); *see*

---

[6] Walton was seventeen years old at the time that counts 1, 2, 3, and 4 were allegedly committed and Walton had turned twenty-one years old by the time he was indicted on May 29, 2009. R. Doc. No. 202-1, p.2.
[7] R. Doc. 240, p.2.

*also United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996) (stating that "for preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose").  There must be actual prejudice that results from the delay. *United States v. Marion*, 404 U.S. 307, 325-26 (1971).  A "real possibility of prejudice inherent in any extended delay," such as the dimming of memories, inaccessibility of witnesses, and lost evidence, is not sufficient to demonstrate this prong. *Id.*  Additionally, while prejudice resulting from the delay may be discovered as the trial proceeds, the actual prejudice must be shown at the present time. *Id.* at 326.  The Tenth Circuit has noted that "successful due process claims based on pre-accusation delay are rare cases in the other Circuits." *Wright v. Deland*, 986 F.2d 1432 (10th Cir. 1993).

       In *United States v. Hoo*, 825 F.2d 667 (2d Cir. 1987), the Second Circuit examined a similar case in which a defendant claimed that his due process rights had been violated because of preindictment delay that disqualified him from JDA protection.  In its summary of the district court's opinion, which the Second Circuit affirmed, the court stated that the defendant "did not have an absolute right to the procedural protections of the JDA because the statute did not require that prosecutions for acts of juvenile delinquency be initiated before the defendant's twenty-first birthday." *Id.* at 668. (*citing United States v. Wai Ho Tsang*, 632 F.Supp. 1336, 1339 (S.D.N.Y. 1986).  After a hearing to determine the reasons for the government's delay, the district court did not find that the government acted in bad faith and, therefore, the defendant's due process rights were not violated; the Second Circuit affirmed the decision. *Hoo*, 825 F.2d at 668-69, 671.

Similarly, in this case, the Court conducted an evidentiary hearing to examine whether there was an illegitimate basis underlying the delay in filing the indictment.  The primary investigator of the Federal Bureau of Investigation, Special Agent F. G. Barker Jr., and former lead government prosecutor, Christopher Cox ("Cox"), testified that there were a multitude of reasons for the lapse of time between the alleged commission of the crime and filing of an indictment, none of which involved seeking to gain a tactical advantage against Walton.

First, during that period of time, the government was investigating the crimes at issue in this case as well as other crimes thought to be related.  The investigation was hampered by difficulty in locating witnesses as well as difficulty in locating the defendants themselves.[8]  Second, Walton pled guilty to a state charge of simple robbery in January, 2006, stemming from the same actions that gave rise to the charges in this case.  Due to adherence to the U.S. Department of Justice's Petite Policy—guidelines for the exercise of discretion in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state proceeding—Cox did not receive the authority to proceed against Walton until mid-May, 2009.  Third, state charges were filed against a co-defendant, Charles Raymond, stemming from a kidnapping and robbery that occurred in 2008 in Arkansas.  Because convictions on the state charges could have been used as an aggravating factor in determining whether the government would seek the death penalty against defendants in this case, delay resulted as the government waited for disposition of Raymond's state charges.  The government elected to indict all of the alleged perpetrators of the 2004 carjacking together.  Therefore, a delay of the indictment against Raymond meant a delay of the indictment against Walton.

---

[8] As the U.S. Supreme Court has stated, "[i]n our view, investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused.…We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 U.S. 783, 795-796 (1977).

In addition, Cox testified credibly that he did not consider Walton's ability or inability to proceed with the protections afforded by the JDA when deciding when to file the original indictment.  Cox testified that, in fact, when he originally drafted the indictment in 2009, he was of the belief that he would need to comply with the JDA when prosecuting Walton.  It was only after conducting some research that he realized that Walton no longer qualified for the protections of the JDA.  Cox further testified that the true impetus for the filing of the original indictment was the five year statute of limitations that was approaching in June, 2009 and that he believed applied to the charges against Walton.

Because the Court finds that defendant did not prove bad faith on the part of the government, the Court does not address whether the defendant suffered substantial prejudice as a result of the preindictment delay.  As Walton adduced no evidence demonstrating that the government improperly delayed his prosecution in order to gain a tactical advantage, the Court finds no deprivation of constitutional rights and Walton's motion to dismiss is denied. *See Hoo*, 825 F.2d at 671.

## B.  Motion to Sever Defendant

Walton also moves for a severance pursuant to Federal Rule of Criminal Procedure 14, claiming that he will suffer prejudice as a result of his joinder with co-defendant Raymond. Specifically, Walton claims that the evidence that the government intends to introduce regarding Raymond's involvement in unrelated violent crimes will prevent the jury from making a reliable judgment as to Walton's guilt or innocence.

The Fifth Circuit has stated that, "[i]t is the rule, not the exception, 'that persons indicted together should be tried together, especially in conspiracy cases.'" *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th

Cir.1993)).  "Still, if a joint trial would prejudice a defendant, district courts may sever the defendants' trials." *Id.* (citing Fed. R. Crim. P. 14(a)).

When presented with evidence admitted under Rule 404(b), the Fifth Circuit has stated that, "evidence of the reputation or past crimes of one co-defendant, although clearly inadmissible against the other co-defendants, does not ordinarily justify severance." *United States v. Rocha*, 916 F.2d 219, 228 (5th Cir. 1990).  Rather, "[t]he test for severance under Rule 14 is whether the jury could sort out the evidence reasonably and view each defendant and the evidence relating to that defendant separately.  If cautionary instructions are deemed sufficient, severance is not required." *United States v. Merida*, 765 F.2d 1205, 1220 (5th Cir. 1985).  The Fifth Circuit "has repeatedly stated that an appropriate limiting instruction is sufficient to prevent the threat of prejudice of evidence which is incriminating against one co-defendant but not another." *Rocha*, 916 F.2d at 228-29.

The evidence that the government intends to introduce against Raymond is not so complicated as to prevent the jury from separating the evidence and properly applying it only against whom it is offered.  The evidence offered only against Raymond—involvement in a prior possession of a firearm, kidnapping, robbery, assault, battery and theft as well as a bank robbery—are unrelated to the carjacking with which both Walton and Raymond are charged.[9] Further, there is no indication that Walton was involved in any of such prior acts.  Since there is no reason to believe that a jury would be unable to separate the evidence  relevant to each defendant after hearing an appropriate limiting instruction, Walton would suffer "no more prejudice 'than that which necessarily inheres whenever multiple defendants or multiple charges are jointly tried.'" *Rocha*, 916 at 229 (quoting *United States v. Tashjian*, 660 F.2d 829, 834 (1st

---

[9] As of this date, the Court intends to defer any ruling with respect to the 404(b) evidence until trial.

Cir.), cert. denied, 454 U.S. 1102 (1981)).  Accordingly, the Court denies Walton's motion to sever himself from his co-defendant Raymond.

C.  Motion to Sever Counts 5, 6, and 7

       Walton next moves to have the Court sever counts 5, 6, and 7 from the remaining counts. As previously mentioned, the first group of counts—counts 1, 2, 3, and 4—relate to a carjacking that took place on June 9, 2004, whereas the second group of counts—counts 5, 6, and 7—relate to a separate carjacking that took place on January 9, 2007.  Walton is the only defendant charged in the second group of counts.  Walton asserts that the second group of counts is improperly joined to the first group of counts.

       Federal Rule of Criminal Procedure 8(a) permits joinder of offenses "if the offenses charged…are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  Rule 8(a) "is broadly construed in favor of initial joinder." *United States v. Blake*, 941 F.2d 334, 338 (5th Cir. 1991) (citing *United States v. Scott*, 659 F.2d 585, 589 (5th Cir. 1981)).  "Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." *United States v. Chagra*, 754 F.2d 1186, 1188 (5th Cir.1985) (citations omitted).  "Joinder of charges is the rule rather than the exception…." *United States v. Singh*, 261 F.3d 530, 533 (5th Cir.2001) (citation omitted).  When offenses are joined as having the "'same or similar character,' the offenses need only be similar in category, *not* in evidence." *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002) (citing *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994) (emphasis in original)).  "[R]equiring too precise an identity between the character of the offenses would fail to give effect to the word 'similar' succeeding the word 'same' and thus violate an elementary rule of statutory

construction." *Id.* at 1241 n.11 (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980)) (internal quotations omitted).

The government cites several cases where the Fifth Circuit has upheld the joinder of offenses of similar character.  In *United States v. Blake*, 941 F.2d 334 (5th Cir. 1991), the Fifth Circuit held that joinder under Rule 8(a) was appropriate where "[b]oth groupings of offenses contain[ed] the identical charge of unlawful possession of firearms by an illegal alien." *Id.* at 338.  The Fifth Circuit has held that joinder under Rule 8(a) is appropriate when the charges are not identical.  In *United States v. Fortenberry*, 919 F.2d 923 (5th Cir. 1990), the Fifth Circuit noted that "transportation of an undeclared firearm on a commercial airliner" and "possession of an unregistered firearm" were both weapons violations and, therefore, concluded that joinder of the charges was proper under the "same or similar character" requirement. *Id.* at 926.

Defendant cites two instances where the Fifth Circuit ruled that joinder was improper.  In *United States v. Holloway*, 1 F.3d 307 (5th Cir. 1993), the Fifth Circuit found that the charge of felon in possession of a firearm did not have the same or similar character to three charges associated with the commission of robberies.  *Id.* at 311. In *United States v. Singh*, 261 F.3d 530 (5th Cir. 2001), the Fifth Circuit similarly found that the charge of felon in possession of a firearm did not have the same or similar character to three counts of harboring illegal aliens for commercial advantage. *Id.* at 533.  In both cases, the additional charge of felon in possession of a firearm was not identical to any of the properly joined charges.  Further, none of the properly joined charges could be categorized as the same type of violation as a felon in possession charge.

The Court finds that the second group of counts is properly joined.  Like *Blake*, counts 5, 6, and 7 contain charges identical to those contained in counts 1, 2, and 3;[10] the two groupings of alleged violations involve the same statutes and similar conduct, namely, conspiring to use a firearm in the commission of a violent crime and then using a firearm to forcibly take a motor vehicle.  "Further, the similarity of character of different offenses does not significantly depend on their separation in time." *United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994) ("Two armored car robberies committed months apart are offenses of same or similar character…if offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned.").

Walton next argues that, even if the counts in the superseding indictment are not dismissed for improper joinder, the counts should be severed pursuant to Rule 14 and each group of charges should be brought at a separate trial because of the risk of prejudice.  "The burden of demonstrating prejudice is a difficult one….  The defendant must show something more than the fact that a separate trial might offer him a better chance of acquittal." *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994) (quoting *United States v. Park*, 531 F.2d 754, 762 (5th Cir.1976)).  For example, "[c]lear prejudice may result when the jury is unable to separate the evidence and apply it to the proper offenses, or where the jury might use the evidence of one of the crimes to infer criminal disposition to commit the other crimes charged." *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990).

The Court does not find that joinder of these alleged crimes will cause a substantial or clear risk that Walton's right to a fair trial or any other specific trial right will be compromised or that the joinder of these offenses will preclude the jury from separating the evidence and

---

[10] Count 4 charges Walton with a violation of 18 U.S.C. 924(j) in connection with the first alleged carjacking on June 9, 2004.  Walton is not charged with a violation of 18 U.S.C. 924(j) in connection with the second alleged carjacking on January 9, 2007.

applying it to the proper offenses. *See Fortenberry*, 914 F.2d at 675 (holding that the district court's refusal to sever did not prejudice the defendant because the evidence related to the first group of counts was distinct in time and source from the evidence related to the second group of counts).  Any potential prejudice created by the joinder of these charges can be cured by effective jury instructions. *See United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995). Accordingly, the Court denies Walton's motion to sever counts of the superseding indictment.

*CONCLUSION*

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion to dismiss counts, motion to sever defendant, and motion to sever counts are **DENIED** and that defendant's motion to suppress statement is **DISMISSED AS MOOT**.

New Orleans, Louisiana, August 18, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**