UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 09-157 |
| JAMAL MARTIN WALTON | SECTION I |

### ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Jamal Martin Walton ("Walton"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed an opposition,[2] to which Walton filed a reply.[3] For the following reasons, the Court finds that an evidentiary hearing is not required, the motion is **DENIED**, and Walton's post-conviction application is **DISMISSED WITH PREJUDICE**.

### BACKGROUND

On March 17, 2011, Walton was charged in all counts of a 7-count superseding indictment.[4] As discussed below, Walton eventually pleaded guilty to counts 1 and 3 pursuant to a plea agreement. Count 1 charged that on or about June 9, 2004, Walton and others conspired to use, carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, as charged in count 3.[5] Count 3 charged that on or about June 9, 2004, Walton and others, aiding and abetting each other, with the intent to cause death and seriously bodily harm, and by force, violence, and intimidation, did take from Nathaniel Robertson ("Robertson") a

---

[1] R. Doc. No. 488.
[2] R. Doc. No. 491.
[3] R. Doc. No. 496.
[4] R. Doc. No. 175. The Court notes that Walton was initially charged in all counts of a 4-count indictment on May 29, 2009. *See* R. Doc. No. 1.
[5] R. Doc. No. 175, at 1-2.

motor vehicle which had been transported, shipped, and received in interstate or foreign commerce, and did intentionally cause Robertson's death by shooting him.[6]

On September 29, 2011, Walton appeared for rearraignment.[7] Walton stated in part that: (1) he understood the charges against him and the elements of the offenses;[8] (2) he understood that the Court could impose the maximum possible sentence on him,[9] up to and including a life sentence;[10] (3) the sentencing guidelines applicable to his case had been explained to him by counsel;[11] (4) he understood that the guidelines are advisory, not binding on the Court, and the Court could depart from the guidelines;[12] and (5) he understood that the Court would not be able to determine the guideline sentence until after the presentence report ("PSR") had been completed.[13] Walton further stated that nobody, including his attorney, had told him what sentence he might receive.[14]

---

[6] R. Doc. No. 175, at 3.

[7] *See* R. Doc. No. 405. The Court notes that Walton was found competent at a hearing on August 13, 2010. *See* R. Doc. No. 404. At the rearraignment hearing, and after a lengthy discussion both in open court and at a sidebar conference, the Court was satisfied with Walton's competency to plead guilty. *See* R. Doc. No. 405, at 3-8.

[8] R. Doc. No. 405, at 18 ("THE COURT: . . . Now, do you have an understanding, do you understand the charges against you and the elements of the offenses? THE DEFENDANT: I do, sir, yes, sir."); R. Doc. No. 405, at 37-38.

[9] R. Doc. No. 405, at 19 ("THE COURT: . . . Do you fully understand, if I accept your plea of guilty, I can impose the maximum possible sentence I just related to you? THE DEFENDANT: I do, sir.").

[10] R. Doc. No. 405, at 19 ("THE COURT: Do you understand I could impose a life sentence on you in connection with you[r] pleading guilty? Do you understand that? Speak up. Do you understand that? THE DEFENDANT: I do, sir, yes, sir."); *see also* R. Doc. No. 405, at 33 ("THE COURT: Have you explained to him that I can impose a life sentence in connection with one of those counts? [Kolinchak]: Yes, I have, Your Honor.").

[11] R. Doc. No. 405, at 20 ("THE COURT: . . . Have the sentencing guidelines applicable to your case [been] explained by your counsel? Have you talked to your attorney about the [s]entencing [g]uidelines? THE DEFENDANT: Yes, sir.").

[12] R. Doc. No. 405, at 20.

[13] R. Doc. No. 405, at 20.

[14] R. Doc. No. 405, at 23 ("THE COURT: Has anyone, including your attorney, told you what sentence you might receive if I accept your guilty plea? THE DEFENDANT: No, sir."); R. Doc.

Walton admitted to the factual basis[15] and stated that he was pleading guilty because he did the acts charged in the superseding indictment.[16] Walton further stated that he was pleading guilty voluntarily[17] and that he was entirely satisfied with the advice and services of his attorney, Carol Kolinchak ("Kolinchak").[18] The government summarized each provision in the plea agreement.[19] The Court explained the waiver of appellate and post-conviction rights,[20] and Walton indicated that he entered into such waiver voluntarily.[21] The Court found that Walton's guilty plea was knowledgeable, voluntary, and had a basis in fact containing all the elements of the crimes charged in counts 1 and 3 of the superseding indictment, and it accepted the guilty plea as to those counts.[22]

---

No. 405, at 31 ("THE COURT: Do you understand that any discussion with your attorney or anyone else regarding Sentencing Guidelines are merely a rough estimate, and I am not -- the Court is not bound by those discussions; do you understand that? THE DEFENDANT: I do, sir. THE COURT: Has anyone connected with the Government, anyone connected with law enforcement or anyone else at any time, other than rough estimates of sentencing guidelines, made any prediction or promise to you as to what your sentence will be? THE DEFENDANT: No, sir."); R. Doc. No. 405, at 32 ("THE COURT: Have you made any representations to him as to the sentence I will impose? [Kolinchak]: I have not, Your Honor.").

[15] R. Doc. No. 405, at 37.
[16] R. Doc. No. 405, at 22 ("THE COURT: Are you pleading guilty because you're in fact guilty of the crimes charged? To put [it] another way, you're pleading guilty because you did the acts charged in Counts 1 and 3 of the Superseding Indictment? THE DEFENDANT: I'm pleading guilty because I'm guilty of the charges, sir."); R. Doc. No. 405, at 38.
[17] R. Doc. No. 405, at 22-23, 38.
[18] R. Doc. No. 405, at 23 ("THE COURT: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have? THE DEFENDANT: We talked about it, sir. THE COURT: Okay. Are you entirely satisfied with the advice and services of your attorney? THE DEFENDANT: Yes, sir.").
[19] *See* R. Doc. No. 405, at 24-28.
[20] *See* R. Doc. No. 405, at 29-31.
[21] R. Doc. No. 405, at 30 ("THE COURT: Did you enter in[to] the waiver voluntarily and of your own free will? THE DEFENDANT: I did, sir, yes, sir.").
[22] R. Doc. No. 405, at 38-39.

On February 16, 2012, the final PSR was filed into the record by U.S. Probation which included a sentencing guideline and recommendation of life imprisonment.[23] On February 23, 2012, Walton filed a motion to withdraw his guilty plea.[24] The Court conducted a hearing[25] and denied the motion.[26] At the March 29, 2012 sentencing hearing, after addressing numerous objections to the PSR,[27] the Court imposed a nonguideline sentence of 40 years, representing 240 months as to count 1 and 480 months as to count 3, to be served concurrently.[28]

Walton appealed the denial of the motion to withdraw his guilty plea and his sentence,[29] but the Fifth Circuit affirmed.[30] *United States v. Walton*, 537 F. App'x 430 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 712 (2013). The U.S. Supreme Court denied certiorari on December 2, 2013,[31] and Walton filed his § 2255 motion, with assistance of counsel, on November 30, 2014.[32] Accordingly, Walton's motion is timely because it was filed within one year after the judgment against him became final. *See* 28 U.S.C. § 2255(f).

## STANDARD OF LAW

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the

---

[23] *See* R. Doc. No. 395-1, at 1.
[24] R. Doc. No. 397.
[25] The hearing on Walton's motion to withdraw his guilty plea began on March 22, 2012, and it was continued and concluded on March 29, 2012, the date of Walton's sentencing. *See* R. Doc. Nos. 417, 423. The Court also denied a motion by Kolinchak to withdraw as Walton's attorney, R. Doc. No. 422, based on a potential conflict of interest. *See* R. Doc. No. 442, at 3-10; *see also* R. Doc. No. 442, at 5 ("THE COURT: So you want her [Kolinchak] to continue to represent you? Is that correct? THE DEFENDANT: That's correct, sir, yes, sir.").
[26] *See* R. Doc. No. 424.
[27] *See* R. Doc. No. 442, at 31-50.
[28] R. Doc. No. 442, at 65.
[29] R. Doc. No. 429.
[30] R. Doc. No. 481.
[31] R. Doc. No. 484.
[32] R. Doc. No. 488.

4

United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

# DISCUSSION

Walton has alleged two grounds for relief: (1) that this Court "improperly sentenced [him] to an effective life sentence and failed to consider his youth in sentencing in violation of the Eighth Amendment,"[33] and (2) that he "received prejudicially ineffective assistance of counsel related to his guilty plea and sentencing in violation of the Sixth Amendment."[34] The Court addresses each ground in turn.

## I. Eighth Amendment

Walton asserts that his 40-year sentence "is an effective life sentence for Eighth Amendment purposes and is therefore unconstitutional under *Graham v. Florida*, 130 S. Ct. 2011 (2010)."[35] In the alternative, he argues that his sentence is unconstitutional under *Miller v. Alabama*, 132 S. Ct. 2455 (2012).[36] Walton raised these grounds on his direct appeal, but he argues that they "were not addressed by the Fifth Circuit on the merits, but instead reviewed only for plain error and, even then, only partially."[37]

---

[33] R. Doc. No. 488, at 3.
[34] R. Doc. No. 488, at 3.
[35] R. Doc. No. 488-1, at 8.
[36] R. Doc. No. 488-1, at 8-9.
[37] R. Doc. No. 488-1, at 9. As an initial matter, the Court notes that Walton "waive[d] his right to contest his conviction and/or his sentence in any collateral proceeding," including any proceedings pursuant to § 2255, except with respect to certain instances relating to ineffective assistance of counsel (as discussed below). R. Doc. No. 335, at 3. Walton reserved "the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum." R. Doc. No. 335, at 3. The instant § 2255 motion is neither a *direct* appeal nor does it challenge any *statutory* maximum. Accordingly, Walton has arguably waived his Eighth Amendment claim. *Compare United States v. Powell*, 574 F. App'x 390, 397 (5th Cir. 2014) ("We are hesitant to conclude that appeal-waiver clauses in plea agreements would prevent a defendant from making certain challenges that his conviction or sentence is unconstitutional or otherwise illegal.") *with United States v. Keele*, 755 F.3d 752, 757 (5th Cir. 2014) ("Here, because the appeal waiver in Keele's signed, written plea agreement waived his right to appeal his sentence with only three specific exceptions, none of which apply here, we conclude that his Eighth Amendment claims are also waived.") (citing *United States v. Lytle*, 90 F. App'x 453, 454 (5th Cir. 2004)). However, the

In *Graham*, the U.S. Supreme Court considered "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime."[38] 560 U.S. at 52-53. The Court answered that question in the negative, imposing a categorical rule that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realisitic opportunity to obtain release before the end of that term." *Id.* at 82.

In *Miller*, the U.S. Supreme Court held "that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. The Court stated that "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles," that is, life without parole. *Id.* at 2475.

As stated by the Fifth Circuit, *Graham* and *Miller* are simply not "appli[cable] to Walton's discretionary federal sentence for a term of years." *Walton*, 537 F. App'x at 437. Notwithstanding this clear statement by the Fifth Circuit, Walton asserts that because the U.S. Sentencing Guidelines assign life sentences a numerical value of 470 months for the purpose of certain calculations, such as percentage reductions and downward departures, Walton's 480-month sentence constitutes "an effective life sentence" in violation of *Graham*.[39]

---

Court need not decide the waiver issue with respect to this claim as the government does not argue the waiver issue with respect to the Eighth Amendment claim.

[38] The Court need not decide whether Walton was convicted of a nonhomicide crime. *See In re Sparks*, 657 F.3d 258, 260 n.1 (5th Cir. 2011) ("Whether aiding and abetting a carjacking resulting in death constitutes 'homicide' within the meaning of *Graham* is a nonfrivolous question . . . .").

[39] R. Doc. No. 488-1, at 9-14; *cf. Goins v. Smith*, 556 F. App'x 434, 439 n.5 (6th Cir. 2014) ("[C]ourts across the country are split over whether *Graham* bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy. Some courts have held that such a sentence is a de facto life without parole sentence and therefore violates the spirit, if not the letter, of *Graham*. Other

Even if the Court were to accept the "de facto life sentence" premise, Walton has not submitted any evidence that his sentence will extend beyond his life expectancy. Walton has been in federal custody since July 24, 2009, when he was 22 years old.[40] Depending on the amount of good time, if any, that Walton earns, he will be released from prison in his fifties or early sixties. The fact that Walton has a "realistic opportunity to obtain release" in his lifetime satisfies *Graham*, 560 U.S. at 82, and distinguishes it from the "de facto life sentence" cases cited by Walton.[41] *Cf. Moore v. Biter*, 725 F.3d 1184, 1186 (9th Cir. 2013) ("Because Moore would have to live to be 144 years old to be eligible for parole, his chance for parole is zero."); *Thomas v. Pennsylvania*, No. 10-4537, 2012 WL 6678686, at *1 (E.D. Pa. Dec. 21, 2012) ("Thomas was prosecuted as an adult and sentenced to a total of 65-to-150 years in prison, with eligibility for parole at age 83.") (footnotes omitted); *United States v. Mathurin*, No. 09-21075, 2011 WL 2580775, at *3 (S.D. Fla. June 29, 2011) ("Here, Mathurin faces a mandatory minimum 307-year sentence."); *People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012) ("Defendant in the present matter will become parole eligible over 100 years from now."); *Floyd v. State*, 87 So. 3d 45, 46 (Fla. Ct. App. 2012) ("In this case, we are faced with a situation where Appellant, if he serves the entirety of his sentence, will be ninety-seven when he is released.")

Similarly, *Miller* is applicable only where a defendant faces a *mandatory* life sentence. *See* 132 S. Ct. at 2460; *see also Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013) ("*Miller* bars only those sentences made mandatory by a sentencing scheme."); *but cf. In re Clark*, 554 F. App'x 276, 277 (5th Cir. 2014) (granting tentative leave to file a

---

courts, however, have rejected the de facto life sentence argument, holding that *Graham* only applies to juvenile nonhomicide offenders expressly sentenced to 'life without parole.'") (citations omitted).
[40] *See* R. Doc. No. 395, at 3-4.
[41] R. Doc. No. 488-1, at 12 n.7.

successive § 2255 motion because "[a]lthough there is some doubt as to whether *Miller* applies to a term-of-years sentence, even a lengthy one like Clark's, those arguments have not been presented to us"). However, even if *Miller* did apply, Walton received the individualized sentencing decision that case requires. The Court discussed and considered Walton's youth at the sentencing hearing, as well as his mental capacity, in fashioning a nonguideline sentence for a term of years, rather than for life.[42]

Accordingly, because the Fifth Circuit has stated that *Graham* and *Miller* are not "appli[cable] to Walton's discretionary federal sentence for a term of years," *Walton*, 537 F. App'x at 437, and because Walton has not demonstrated that he may be entitled to relief, even if such cases were applicable, the Court finds this claim to be without merit.

## II. Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or

---

[42] *E.g.*, R. Doc. No. 442, at 64-65 ("THE COURT: I look to your relative role in comparison to Mr. Raymond and the others, and I do consider your age at the time of the offense. So the question is, for me, am I comfortable saying that you should . . . never be released from prison, give [you] a life sentence so you will die in jail, . . . as opposed to giving you some other significant sentence. So I think, under all of the circumstances, that a very significant non-Guideline sentence is appropriate. So, I'm not going to give you a life sentence, but you are going to get a very significant sentence."); *see also* R. Doc. No. 442, at 45-50, 55-56, 58, 63-65.

9

omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in its outcome." *Williamson*, 183 F.3d at 463.

A petitioner who pleads guilty must show that the outcome of the plea process would have been different with competent advice and that "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012) (internal quotation marks omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("Because the claim . . . is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 697. A court is not required to

address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

Walton asserts that he "accepted a plea bargain based on representations by his lawyer that the resulting guideline range under the plea was 30 to life," and that he "would not have accepted the plea but for the misadvice."[43] Walton notes that there are several documents in the record supporting his assertion that he was advised that his guidelines would be 30 to life,[44] including an affidavit by Kolinchak.[45] Walton cites *United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005),[46] which notes that "grossly underestimating a defendant's exposure under the sentencing guidelines constitutes ineffective assistance of counsel." *Id.* at 581-82 (citing *United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004)).

Assuming *arguendo* that Walton's counsel's performance was deficient, the Court does not find that Walton suffered *Strickland* prejudice. As noted by the government, "Walton pleaded guilty knowing that he could receive a life sentence and that any conversations with his counsel about the advisory guidelines were only estimates and not binding on this Court."[47] Walton stated that he understood that the Court could impose the maximum possible sentence on him,[48] up to and including a life sentence.[49] Walton further stated that nobody, including his attorney, had told him what sentence he might receive.[50] Walton also knew that the Court would not be able to determine the guideline sentence until after the PSR had been completed.[51] Walton

---

[43] R. Doc. No. 488-1, at 20-21; *see also* R. Doc. No. 490-4, ¶ 4.
[44] R. Doc. No. 488-1, at 21-23.
[45] R. Doc. No. 490-4.
[46] R. Doc. No. 488-1, at 25.
[47] R. Doc. No. 491, at 24.
[48] R. Doc. No. 405, at 19.
[49] R. Doc. No. 405, at 19.
[50] R. Doc. No. 405, at 23, 31-32.
[51] R. Doc. No. 405, at 20.

cannot now retract these statements that he made under oath in open court. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013) ("We bear in mind that 'solemn declarations in open court carry a strong presumption of verity,' and a defendant ordinarily may not refute testimony given under oath at a plea hearing.") (citations omitted) (quoting United States v. McKnight, 570 F.3d 641, 649 (5th Cir. 2009)).

More significantly, even though Walton may have been erroneously advised that his guideline sentence would be thirty years to life, he was not prejudiced because he actually received a sentence within that range. Walton did not receive any additional jail time above and beyond what he was allegedly told that he could expect. Accordingly, Walton cannot demonstrate *Strickland* prejudice with respect to this argument.

Walton also asserts that he received ineffective assistance of counsel at sentencing when his attorney failed to move for a downward departure pursuant to U.S.S.G. § 5K2.23.[52] However, as the government correctly asserts,[53] Walton "waive[d] his right to contest his conviction and/or his sentence in any collateral proceeding," including any proceedings pursuant to § 2255, and the exception for ineffective-assistance-of-counsel claims only applies "if the defendant establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself."[54] Walton does not make any

---

[52] R. Doc. No. 488-1, at 25-28.
[53] R. Doc. No. 491, at 24.
[54] R. Doc. No. 335, at 3.

such argument in connection with the § 5K2.23 departure. Accordingly, such argument is waived.[55]

## CONCLUSION

An evidentiary hearing is required on Walton's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the foregoing reasons, the motion, files, and record of the case conclusively show that Walton is not entitled to relief. *See Bartholomew*, 974 F.2d at 41. Accordingly,

**IT IS ORDERED** that the motion is **DENIED** and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 2, 2015.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[55] The Court also notes that it imposed a nonguideline sentence, and it rejects any argument that if the Court would have granted such a departure it would have affected the Court's nonguideline sentence.