# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 09-157** |
| **JAMAL MARTIN WALTON** | **SECTION I** |

## ORDER & REASONS

Before the Court is *pro se* defendant Jamal Martin Walton's ("Walton") motion[1] for "compassionate release and/or sentence reduction" pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes[2] the motion. The Court finds that Walton has not presented extraordinary and compelling reasons justifying a sentence reduction. Furthermore, after considering the applicable factors in 18 U.S.C. § 3553(a), the Court concludes that a sentence reduction is not warranted. Accordingly, the Court denies the motion.

## I.

On March 17, 2011, Walton was charged in all counts of a seven-count superseding indictment.[3] On September 30, 2011, pursuant to a plea agreement, Walton pleaded guilty to counts 1 and 3; the remaining counts were dismissed.[4] Count 1 charged that on or about June 9, 2004, Walton and others conspired to use,

---

[1] R. Doc. Nos. 616 (motion), 616-1 (memorandum), & 616-3 (letter to the Court).
[2] R. Doc. No. 624.
[3] R. Doc. No. 175. The Court notes that Walton was initially charged in all counts of a four-count indictment on May 29, 2009. *See* R. Doc. No. 1.
[4] R. Doc. No. 335.

carry, brandish, and discharge a firearm during and in relation to a crime of violence, to wit: carjacking, in violation of 18 U.S.C. § 924(o), as charged in count 3.[5] Count 3 charged that on or about June 9, 2004, Walton and others, aiding and abetting each other, with the intent to cause death and seriously bodily harm, and by force, violence, and intimidation, did take from the person and presence of Nathaniel Robertson ("Robertson") a motor vehicle which had been transported, shipped, and received in interstate or foreign commerce, and did intentionally cause Robertson's death by shooting him with a semiautomatic assault rifle.[6]

As part of his guilty plea, Walton signed a factual basis, admitting that he conceived of the idea to carjack Robertson.[7] Walton enlisted a co-defendant, Charles Raymond ("Raymond"), to help with the carjacking, and Walton instructed Raymond to bring a firearm.[8] Walton drove Raymond and other co-defendants to Robertson's home where Raymond shot Robertson several times and killed him.[9] Walton then fled the scene of the crime, and a co-defendant attempted to hide the murder weapon.[10]

---

[5] R. Doc. No. 175, at 1–2.
[6] *Id.* at 3.
[7] R. Doc. No. 334 (factual basis), at 1. *See also* R. Doc. No. 442 (sentencing hearing transcript), at 35 (The Court: "Walton himself admits that he came up with the idea to car-jack the Hummer H2[.]").
[8] R. Doc. No. 334, at 1. *See also* R. Doc. No. 442, at 35.
[9] R. Doc. No. 334, at 2.
[10] *Id.*

On February 16, 2012, U.S. Probation filed the final pre-sentence investigation report ("PSR"), which included a sentencing guideline of life imprisonment.[11] On February 23, 2012, Walton filed a motion to withdraw his guilty plea, alleging that he did not enter it knowingly, intelligently, or voluntarily.[12] Walton, through counsel, argued that Walton's cognitive impairments prevented him from being able to understand his legal situation and make informed choices about his case.[13] The Court conducted a hearing[14] and denied the motion.[15]

At the March 29, 2012 sentencing hearing, after addressing numerous objections to the PSR,[16] the Court imposed a nonguideline sentence of 40 years, representing 240 months as to count 1 and 480 months as to count 3, to be served concurrently.[17] Walton appealed the Court's judgment and the denial of his motion to withdraw his guilty plea.[18]

The United States Fifth Circuit Court of Appeals affirmed this Court's ruling on Walton's motion to withdraw his guilty plea and affirmed Walton's sentence.

---

[11] R. Doc. No. 395-1, at 1.
[12] R. Doc. No. 397; R. Doc. No. 397-1, at 8–9.
[13] R. Doc. No. 397-1, at 3–4, 8–9.
[14] The hearing on Walton's motion to withdraw his guilty plea began on March 22, 2012, and it was continued and concluded on March 29, 2012, the date of Walton's sentencing. *See* R. Doc. Nos. 417 & 423. The Court also denied a motion by attorney Carol A. Kolinchak to withdraw as Walton's counsel based on a potential conflict of interest. *See* R. Doc. No. 442, at 3–10; *see also id.* at 5 ("THE COURT: So you want [Kolinchak] to continue to represent you? Is that correct? THE DEFENDANT: That's correct, sir, yes, sir.").
[15] R. Doc. No. 424.
[16] R. Doc. No. 442, at 31-50.
[17] R. Doc. No. 442, at 65.
[18] R. Doc. No. 429.

*United States v. Walton*, 537 F. App'x 430 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 712 (2013). Among other arguments, Walton's appeal claimed that his forty-year sentence violated the Eighth Amendment in light of the Supreme Court's decisions in *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012). As to this claim, the Fifth Circuit, on plain error review, rejected Walton's argument, and it noted that the holdings of *Graham* and *Miller* do not "appl[y] to Walton's discretionary federal sentence for a term of years." *Walton*, 537 F. App'x at 437.

On November 30, 2014, Walton, represented by counsel, filed his first petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[19] Walton alleged that his forty-year sentence violated the Eighth Amendment, and that he received ineffective assistance of counsel in connection with his guilty plea and sentencing in violation of the Sixth Amendment.[20] On April 2, 2015, this Court denied Walton's request for post-conviction relief and dismissed his § 2255 petition with prejudice.[21] The Court also declined to issue a certificate of appealability ("COA").[22] Walton appealed the Court's dismissal of his § 2255 petition, and he requested a COA from the Fifth Circuit, which the Fifth Circuit denied because Walton failed to make the required substantial showing of the denial of a constitutional right.[23]

---

[19] R. Doc. No. 488.
[20] *Id.* at 3.
[21] R. Doc. Nos. 498 & 499.
[22] R. Doc. No. 500.
[23] R. Doc. No. 507.

4

On May 6, 2019, Walton filed his second § 2255 petition,[24] which the Court transferred to the Fifth Circuit for authorization to file a successive habeas application in accordance with 28 U.S.C. § 2244 and § 2255(h).[25] The Fifth Circuit ordered Walton to file a motion for authorization within thirty days of its order.[26] Walton did not timely file a motion in compliance with the Fifth Circuit's order, and the Fifth Circuit dismissed his request for authorization to file a successive 2255 petition.[27]

On July 10, 2019, Walton filed a request, styled as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b).[28] Walton requested that the Court vacate its April 2015 order dismissing with prejudice Walton's first motion for relief under § 2255.[29] In his Rule 60(b) motion, Walton alleged ineffective assistance of counsel on the basis that his habeas counsel omitted two meritorious claims, and the Court determined that Walton's motion was actually a successive motion pursuant to § 2255.[30] Because Walton had not obtained prior authorization to file a successive § 2255 motion, the Court transferred Walton's July 2019 motion to the Fifth Circuit.[31] The Fifth Circuit ordered Walton to file a motion for

---

[24] R. Doc. No. 570.
[25] R. Doc. No. 571.
[26] R. Doc. No. 576.
[27] R. Doc. No. 579.
[28] R. Doc. No. 577.
[29] R. Doc. No.
[30] R. Doc. No. 581, at 6–7.
[31] *Id.* at 7.

5

authorization within thirty days of its order.³² Walton did not timely file a motion in compliance with the Fifth Circuit's order, and the Fifth Circuit dismissed his request for authorization to file a successive 2255 petition.³³

On March 7, 2022, Walton filed his instant motion requesting a sentence reduction.³⁴ Walton maintains that extraordinary and compelling reasons exist for a sentencing reduction based on his age at the time that he committed his offenses.³⁵ Specifically, Walton maintains that because he was seventeen years old at the time of the carjacking, he was less culpable, and Walton argues that this Court failed to consider Walton's age when the Court sentenced him.³⁶

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). This rule has some exceptions which, under the First Step Act, may now be presented to the court upon a defendant's motion.³⁷ For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a

---

³² R. Doc. No. 582.
³³ R. Doc. No. 583.
³⁴ R. Doc. No. 616.
³⁵ R. Doc. No. 616-1, at 5–15.
³⁶ *Id.*
³⁷ The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

compassionate release request] by the warden of the defendant's facility, *whichever is earlier*[.]" *Id.*; § 3582(c)(1)(A) (emphasis added).[38]

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Fifth Circuit recently clarified that "neither the [United States Sentencing Commission's] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Nonetheless, the Fifth Circuit has also recognized that the policy statements may still "inform[ ] [the Court's] analysis." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

### III.

#### A.

A defendant must present extraordinary and compelling reasons justifying his compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement "informs" this Court's analysis of whether Walton has presented

---

[38] The United States does not dispute that Walton has satisfied the exhaustion requirement, *see* R. Doc. No. 624, at 3–9, and thirty days lapsed between Walton's request to his facility's Warden and the filing of the instant motion for a sentence reduction. *See* R. Doc. No. 616, at 1; R. Doc. No. 616-2, at 2. *See also United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021).

such reasons. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.). The policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

With respect to age, the Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant is "at least 65 years old," is "experiencing a serious deterioration in physical or mental health because of the aging process," and has "served at least 10 years or 75 percent of [his] term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. N.1(B).

Although the Sentencing Commission's policy statement contemplates old age—rather than youth—as a factor with respect to a sentence reduction, the crux of Walton's argument is that "[y]outh matters in sentencing."[39] Walton references a series of United States Supreme Court cases[40] that have issued following Walton's sentencing hearing and collectively support the notion that a defendant's youth or immaturity at the time of his offense is a relevant factor at sentencing. *See, e.g.*,

---

[39] R. Doc. No. 616-1, at 5 (quoting *Jones v. Mississippi*, 141 S. Ct. 1307, 1316, 1332 (2021)).
[40] R. Doc. No. 616-1, at 12 (citing *Miller v. Alabama*, 567 U.S. 4660 (2012); *Alleyne v. United States*, 570 U.S. 99 (2013); *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016); and *Jones v. Mississippi*, 141 S. Ct. 1307 (2021)).

*Miller*, 567 U.S. at 477 ("To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences."). Walton also references two United States District Court cases that granted compassionate release based in part on the defendant's youth at the time of his offense.[41]

In response, the United States does not argue that the Court is categorically prohibited from considering Walton's youth at the time of his offense in the context of a motion for a sentence reduction pursuant to 18 U.S.C. § 3582.[42] Instead, the United States notes, among other things, that at Walton's sentencing hearing the Court did consider Walton's age, and further that Walton would be a danger to the community if he were released.[43]

Even assuming that Walton's youth at the time of his offense is a proper factor for the Court to consider with respect to his instant motion, Walton fails to demonstrate extraordinary and compelling reasons that warrant a sentence reduction.[44] First, as the United States correctly notes, the Court expressly

---

[41] *United States v. Cruz*, No. 94-112, 2021 WL 1326851 (D. Conn. Apr. 9, 2021); and *United States v. Scruggs*, No. 99-200, 2021 WL 3115819 (E.D. Va. July 22, 2021).
[42] R. Doc. No. 624, at 5–9.
[43] *Id.* at 6, 10–11.
[44] The parties have not offered any Fifth Circuit opinion that squarely addresses whether youth at the time of the defendant's offenses is a proper factor to consider with respect to a sentence reduction motion pursuant to 18 U.S.C. § 3582(c)(1)(A). The courts that have addressed this issue have not reached a consensus. *See, e.g.*, *United States v. Sterling*, No. 05-20061, 2021 WL 197008, at *6 n.11 (W.D. La. Jan. 19, 2021) ("[The court] finds Sterling's youth at the time of the offenses is a factor to

9

considered Walton's youth at the sentencing hearing. Walton's counsel repeatedly argued that Walton's youth was an important mitigating factor with respect to Walton's sentencing guideline calculation.[45] Next, with respect to the merits of the sentence that the Court should impose, Walton's counsel made a passionate argument that "[j]uveniles as a group have significantly impaired ability to anticipate the future consequences and are less able to recognize that, for example, participation in a car-jacking might lead to someone's injury or death."[46]

Walton mistakenly asserts that "the Court felt compelled to be unable to consider [Walton's] age in consideration of a sentence[.]"[47] However, the Court expressly considered Walton's age.[48] Further, Walton has raised this unavailing argument before. *United States v. Walton*, No. 09-157, 2015 WL 1525702, at *4

---

be considered in determining whether Sterling has shown 'extraordinary and compelling' reasons justifying a sentence reduction pursuant to § 3582(c)(1)(A)."); *but see United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021) (holding that it was error for the district court to rely on "Hunter's age at the time of the murder and 'the sentencing disparities between [Hunter and] his co-defendants'—facts that existed at sentencing—and [to use] those as factors to find 'extraordinary and compelling reasons' for a sentence reduction.").

[45] *See, e.g.*, R. Doc. No. 442 (sentencing hearing transcript), at 33–35 (discussing Walton's youth with respect to an objection to his sentencing guidelines calculation); *id.* at 36–37 (same); 45–47 (same).

[46] R. Doc. No. 442, at 53. Further, Walton's counsel noted that "one important distinguishing factor that mitigates in [Walton's] favor, and that the United States Supreme Court has recognized, is his status as a juvenile." *Id.* at 60.

[47] R. Doc. No. 616-1, at 14.

[48] R. Doc. No. 442, at 55 (The Court: "[T]he fact that [Walton is] eight months short of 18 years old when this happens, quite frankly, I give that very little deference in this case."); 58 (The Court: "[It's time for Walton] to face the consequences for [his] actions. Notwithstanding the fact that [Walton] was 17 years old and 4 months at the time that he committed this horrible tragic crime."); & 64 (The Court: "I do consider [Walton's] age at the time of the offense.").

(E.D. La. Apr. 2, 2015) ("The Court discussed and considered Walton's youth at the sentencing hearing, as well as his mental capacity, in fashioning a nonguideline sentence for a term of years, rather than for life."). The Court is not persuaded that Walton's youth—which the Court considered when originally pronouncing Walton's sentence—now constitutes an extraordinary and compelling reason justifying a sentence reduction.[49]

Second, the cases that Walton references are readily distinguishable. In *United States v. Cruz*, the district court noted that "Cruz's exemplary conduct while imprisoned for more than 26 years," along with "the steps he has taken to educate himself and guide others," supported the conclusion that Cruz's "rehabilitation is truly exceptional." *Cruz*, 2021 WL 1326851, at *9. In *United States v. Scruggs*, the record was "laden with letters from all manner of personnel at FCI Bennettsville attesting to the fact that Scruggs has been rehabilitated and has put to productive use the time that he has spent in prison." *Scruggs*, 2021 WL 3115819, at *3. Both

---

[49] Walton also argues that his sentence "should be considered the equivalent of a life without parole sentence." *See* R. Doc. No. 616-1, at 9. Of course, the Fifth Circuit noted that "Walton's discretionary federal sentence" is not a life sentence, but rather one "for a term of years." *Walton*, 537 F. App'x at 437. Further, Walton himself acknowledges that his "sentence was not--technically--life without parole[.]" R. Doc. No. 616-1, at 10. All the same, "[e]ven if the Court were to accept the 'de facto life sentence' premise, Walton has not submitted any evidence that his sentence will extend beyond his life expectancy." *Walton*, 2015 WL 1525702, at *3. The length of Walton's incarceration was one factor that the Court expressly considered when originally pronouncing Walton's sentence. *See* R. Doc. No. 442, at 64–65 (discussing whether Walton should receive a life sentence "as opposed to giving [him] some other significant sentence"). The Court is unconvinced that the length of Walton's sentence now constitutes an extraordinary and compelling reason warranting a sentence reduction.

courts reasoned that the defendants exemplary conduct contributed to the conclusion that a reduction in sentence was warranted. *Cruz*, 2021 WL 1326851, at *9; *Scruggs*, 2021 WL 3115819, at *3.

In contrast, Walton's disciplinary history while incarcerated is extensive. He has eleven reported offenses, and he committed the most recent transgression in October 2021 by striking another inmate's head and upper torso with closed fists.[50] Among other things, Walton's disciplinary history contains offenses for fighting, possession of a weapon, assault, and possession of heroin as well as marijuana.[51] In one instance, Walton was observed assaulting another inmate by striking the inmate in a stabbing motion to his back. The other inmate sustained three puncture wounds to his right shoulder, left shoulder, and left flank.[52] In another instance, prison officials discovered Walton in possession of a six-inch homemade metal weapon.[53] Further, the United States Bureau of Prisons reports that Walton has a high recidivism risk level and that Walton displays anger and hostility.[54] This disciplinary history distinguishes Walton from the defendants in *Cruz* and *Scruggs*. Walton has also not presented any letters from prison personnel attesting to his rehabilitation. *Cruz* and *Scruggs* are not apposite here.

---

[50] R. Doc. No. 624-2.
[51] R. Doc. No. 624-1, at 1; R. Doc. No. 624-2.
[52] R. Doc. No. 624-2.
[53] *Id*.
[54] R. Doc. No. 624-1, at 1.

Overall, Walton's argument fundamentally misunderstands the Court's reasoning at the sentencing hearing. The Court simply disagreed that Walton's youth outweighed other factors, including the extremely serious nature of this offense. Walton's attempt to recast the Court's judgment as extraordinary and compelling circumstances is unpersuasive.[55]

### B.

Even if the Court were to find that Walton had presented extraordinary and compelling reasons, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the Court concludes that a sentence reduction is not warranted. *See* 18 U.S.C. § 3582(c)(1)(A). *See also Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021) ("[T]he district court is obligated to consider the Section 3553(a) factors before deciding whether to order compassionate release[.]").

The most applicable factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the "need for the

---

[55] The United States also addresses issues that Walton included in his original letter to the Warden, *e.g.*, that Walton is allegedly at a high risk of contracting the novel coronavirus ("COVID-19") because Walton declined the COVID-19 vaccine based on his religious beliefs. *See* R. Doc. No. 616-2. Walton does not present any argument concerning COVID-19 in his motion or memorandum. *See generally* R. Doc. Nos. 616, 616-1. Nor does Walton present any arguments based on other issues, such as intellectual limitations. *Id*. *Cf*. R. Doc. No. 624, at 7. Therefore, such issues are not properly before the Court. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("in both civil and criminal cases, in the first instance and on appeal ..., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.") (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)); *United States v. Maes*, 961 F.3d 366, 377 (5th Cir. 2020) (noting that failure to adequately brief an argument forfeits the claim).

sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[.]" *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). After considering these factors, the Court concludes that a sentence reduction is inappropriate.

With respect to Walton's sentencing, the Court "agonized over this particular case."[56] Walton conceived of the plan to carjack Robertson, and Walton was the person who decided that the group of co-defendants should recruit someone with a firearm, in this case an assault rifle.[57] "Walton exercised decision-making authority when he decided to commit the carjacking with a deadly weapon and to recruit and control Raymond by instructing him to get his gun."[58] "Walton initiated a plan, transported his codefendants to the scene of the crime and drove the get-away car to a location where the murder weapon could be concealed."[59] "Walton was separately involved in the participation, planning and organizing of those offenses."[60]

Based on the evidence the Court reviewed, the Court developed the firm conviction that Walton is a "dangerous person," and that Walton "would hurt or kill somebody" else if given the opportunity.[61] Walton's disciplinary history while

---

[56] R. Doc. No. 442, at 63.
[57] R. Doc. No. 442, at 41–42, 54–55.
[58] R. Doc. No. 442, at 42.
[59] *Id.*
[60] *Id.*
[61] *Id.* at 57. As stated in the PSR, Walton had prior juvenile adjudications for resisting an officer and possession of marijuana. He had prior adult convictions for

14

incarcerated reinforces the notion that Walton is comfortable with engaging in violence.[62]

With respect to the seriousness of the offense, Walton's actions "changed the lives of [Robertson's] family forever[.]"[63] Walton's actions will cause Robertson's family to "suffer for the rest of their lives," and "his children will suffer for the rest of their lives."[64] Murdering an unarmed victim is obviously an extremely serious offense.

Overall, at his original sentencing hearing, "Walton received the individualized sentencing decision [that the law] requires." *Walton*, 2015 WL 1525702, at *4. The Court "look[ed] to [Walton's] relative role in comparison to [his other co-defendants], and [the Court] consider[ed] [Walton's] age at the time of the offense."[65] With respect to Walton's instant motion, the Court has again reviewed the relevant factors *de novo*, and the length of Walton's sentence remains justified by the section 3553(a) factors enumerated above. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C). These factors strongly weigh against granting Walton's instant motion for a sentence reduction. Accordingly, the Court will deny his motion.

---

simple robbery, resisting an officer, and possession of marijuana. *See* R. Doc. No. 395, at 11–12.
[62] R. Doc. No. 624-1, at 3; R. Doc. No. 624-2.
[63] R. Doc. No. 442, at 57.
[64] Id. at 64.
[65] R. Doc. No. 442, at 64. *See also* R. Doc. No. 66, at 2; R. Doc. No. 68, at 1–4; R. Doc. No. 94, at 44–47, 49.

## IV.

Walton also requests that the Court appoint counsel in connection with his motion for a sentence reduction.[66] There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). In the context of 18 U.S.C. § 3582(c)(2) motions, which are analogous to sentence reduction motions pursuant to 18 U.S.C. § 3582(c)(1)(A) like Walton's, "the Fifth Circuit has held that defendants have no statutory or constitutional right to counsel." *United States v. Joseph*, No. 15-307, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (Vance, J.) (citing *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995), and *United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010) (per curiam)).

"Although a defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." *United States v. Mogan*, No. 14-040, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020) (Morgan, J.) (quoting *United States v. Rodriguez*, No. 10-17, 2015 WL 13664966, at *2 (S.D. Tex. Aug. 20, 2015) (citing *United States v. Robinson*, 542 F.3d 1045, 1051–52 (5th Cir. 2008))); *see* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").

---

[66] R. Doc. No. 616-1, at 15.

The interests of justice do not require that counsel be appointed where a "defendant's motion does not involve complicated or unresolved issues" or where a defendant proves capable of representing himself *pro se*. *See Joseph*, 2020 WL 3128845, at *2 (quoting *Moore*, 400 F. App'x at 852 (addressing a § 3582(c)(1)(A)(i) motion on appeal)) (internal citation and alterations omitted). "[A] claim for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-20018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020). Therefore, the interests of justice do not require that the Court appoint counsel for Walton.

## V.

For all the foregoing reasons,

**IT IS ORDERED** that Walton's motion[67] for a sentence reduction is **DENIED**.

New Orleans, Louisiana, June 16, 2022.

                                                                    _____
                                                                    **LANCE M. AFRICK**
                                                                    **UNITED STATES DISTRICT JUDGE**

---

[67] R. Doc. No. 616.